CINEMA PATENTS CO., Inc., v. COLUMBIA PICTURES CORPORATION et al.

No. 7723.

Circuit Court of Appeals, Ninth Circuit.

Dec. 6, 1935.

Rehearing Denied Jan. 13, 1936.

See, also, 67 F.(2d) 310.

Herbert A. Huebner, of New York City, and Ward D. Foster, of Los Angeles, Cal., for appellant.

Frank L. A. Graham, of Los Angeles, Cal., for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This appeal is from a decree dismissing appellant's bill in equity alleging infringement by appellees of three patents owned

by appellant. The three patents claimed to have been infringed by appellees are No. 1,177,697 issued April 4, 1916, to Leon Gaumont for certain improvements in developing, fixing, toning, and otherwise treating motion picture films; No. 1,209,696 issued December 26, 1916, to the same patentee for improvements in apparatus for drying motion picture films; and No. 1,260,595 issued March 26, 1918, to Fredrick B. Thompson for improvements in motion picture film treating apparatus. The cause was referred by the trial court to a special master to take and hear the evidence, to determine the facts and to recommend the decree to be entered thereon. The special master found claims 1, 2, and 8 to 12 inclusive, of Gaumont patent, No. 1,177,697, and claim 12 of Gaumont patent, No. 1,209,696, to be valid and infringed. As to the other claims in issue, the special master found that they were not infringed. Exceptions to the special master's report were filed with the trial court by both appellant and appellees. Appellant excepted to the conclusion of the master that the other claims in issue were not infringed by appellees' device and appellees excepted to the conclusion of the special master that claims 1, 2, and 8 to 12 inclusive, of Gaumont patent, No. 1,177,697, and claim 12 of Gaumont patent, No. 1,209,696, were valid as being novel and amounting to invention and were infringed by appellees' device. The trial court allowed appellees' and overruled appellant's exceptions to the report of the special master and found that none of the claims in issue were infringed by appellees' device and further that, if the claims in issue in the Gaumont patents are given sufficient scope to include appellees' Duplex machine as infringing thereupon, they are invalid for lack of invention.

In its brief on appeal appellant relies only upon the claims found by the special master to have been infringed, that is, claims 1, 2, and 8 to 12 inclusive, of Gaumont patent, No. 1,177,697, and claim 12 of Gaumont patent, No. 1,209,696, and has waived further consideration of the other claims and patents put in issue in the proceedings before the trial court.

There are several steps in the "processing" of a plate or film after it has been exposed. First is the developing process during which the film or plate is placed in a bath composed of certain chemicals in solution to develop the latent image contained thereon. Second, the film or plate is usually subjected to a short rinsing to remove the developer remaining thereon after it is withdrawn from the developer. Third is the fixing process by which the film placed in a bath of hyposulphate of soda in solution; fourth, the washing of the film or plate, usually with water, to remove the chemicals to which it had been previously subjected; then the plate, or film, is dried. There are other steps for special treatment, such as tinting or coloring the film, but the present case is not concerned with special treatment, but relates solely to processing film in the standard manner as briefly described above.

During the early stages of the photographic art it was customary to use photographic plates, and later, films in short lengths, which, after exposure, were manually placed in the developing solution, the rinsing water, the fixing solution, the washing bath and then allowed to dry. With the advent of motion picture photography the film was supplied in long lengths on reels. The oldest, and, until recently, the most common method of processing motion picture film is the "rack," or "drum," method. The film in lengths of 200 feet or less were wrapped spirally around racks, or drums, which were then successively placed in tanks containing the developing, fixing, and washing baths. The film was then placed in the drying room. The lengths of film were then patched together in lengths approximately 1,000 feet to be used on reels. The major disadvantages of this process were (1) the large number of manual operations required; (2) danger of scratching the emulsion side of the film; (3) differences in degrees of development between the several lengths which were placed together in the same reel that caused variation in the appearance of the projected pictures; (4) danger of breakage at the several patches; (5) in sound films the interruption of the sound track at the patches.

Appellant's alleged invention seeks to overcome these defects by a method of machine processing by which the exposed but undeveloped film is introduced at one end of the apparatus, mechanically progressed through successive receptacles containing appropriate chemical solutions or water, then through the drying chamber and finally is delivered at the other end wound on a

reel and ready for use. Gaumont patent, No. 1,177,697, relates to means for developing, fixing, and washing the film—the so-called "wet end" of the treatment. It claims both the process and the apparatus for putting that process into operation. The second patent, No. 1,209,696, relates to the "dry end" of the treatment and claims the apparatus for drying the film after it has passed through the steps of the wet processing. Originally the subject-matter of both patents was included in a single application filed February 17, 1909, but the patents were issued only after a divisional application had been filed covering the subject-matter of the second patent.

The patents in suit were considered by the Circuit Court of Appeals for the Second Circuit in Cinema Patents Co., Inc., v. Warner Bros. Pictures, Inc., 66 F.(2d) 744, and in the companion case, Cinema Patents Co., Inc., v. Duplex Motion Picture Industries, Inc., 66 F.(2d) 748. In the first case, 66 F.(2d) 744, 745, appellant's apparatus is amply described as follows:

"The apparatus described in the first patent consists of a series of deep tanks or receptacles containing developer, rinse water, fixing solution, and washing water in the order named. For each tank there is a removable frame which fits over the top of the tank and supports within it two parallel shafts, one above the other, each carrying a row of spools or rollers. The spread between the upper and lower shafts of rollers is adjustable. Located above the upper row of rollers is a sprocket spool keyed to an independent shaft which is rotated by an electric motor. The teeth of the sprocket spool engage perforations in the margin of the film and thus cause the film to move forward. It travels over the upper and lower rollers in a spiral path transversely across the developer tank until it reaches a sprocket on the other side of the frame. Thence the film is led over an idler roller into a tubular-shaped, rinsing receptacle into which it dips in the form of a skewed loop in which floats a roller; thence it passes over another idler roller to the first sprocket for the tank containing fixing solution, through which it travels in like manner as in the developer tank but in an opposite direction of travel. Thence it is passed in similar manner through the final washing tank. The film is started with the emulsion surface outermost, and by reason of its spiral path over upper and lower rollers the emulsion surface remains out of contact with the rollers and the sprockets as it moves forward. Because of the torsional strain resulting from its spiral path, Gaumont prescribes preferably spherical shaped rollers. When the film makes a single loop, as in the rinsing tube, it is given a twist so that the emulsion side will remain outermost as it goes around the lower spool, and it is twisted back again coming up. A reservoir is provided for storing the developing solution which is fed by gravity to the developing tank, and a constant circulation between reservoir and tank is maintained by a centrifugal pump. To regulate the temperature of the developer there is located in the reservoir a coil of pipe through which hot or cold water may be circulated.

"After the film has passed through the final washing tank employed in the wet end of the treatment, it continues its travel to the drying apparatus of the second patent. This consists of a drying cabinet partitioned into compartments into which conditioned air may be admitted while the film is passing through. Its travel through is accomplished by means of a sprocket spool and upper and lower shafts of rollers, similar to the arrangement in the wet end of the apparatus, and it takes a similar spiral path from side to side across the cabinet. The sprocket is rotated by the same electric motor that drives the sprockets of the wet end. To obviate the strain resulting from shrinking of the film during drying, the lower shaft of rollers is permitted a limited up and down movement and is suspended in the loops of the film. Should the film break, this shaft will fall and thus complete an electrical circuit which sounds a signal and stops the motor that drives both the wet and dry ends of the apparatus. Before entry into the drying cabinet the film passes over rollers supported on the outside thereof, and is formed into a skewed loop in the bight of which rests a weighted roller; the purpose of this loop being stated to be to 'compensate for any ordinary irregularities in the speed imparted by the several driving devices and thereby avoid such tension upon the film or print as might tend to rupture it.'"

In Cinema Patents Co. v. Warner Bros. Pictures, supra, the court stated in conclusion: "For purposes of this appeal we have assumed, without decision that the several claims in suit are valid. None of them is found to be infringed. On this ground the decree is affirmed, without decision of other questions which have been argued."

In the companion case, Cinema Patents Co. v. Duplex Motion Picture Industries, supra, the same type of machine, which in the case at bar is alleged to be an infringement of the patents in suit, was held not to infringe the same claims which are in issue in the principal case with the exception of claim one of patent No. 1,177,697. In that case claim one of patent No. 1,177,697, being the process claim, was not in issue, as the defendant was merely the manufacturer of the Duplex machine and not a user thereof.

Claim one of the first Gaumont patent, No. 1,177,697, is the only process claim in issue and is as follows: "1. The herein described improved process of treating photographic films or prints, which consists in moving such films or prints endwise over suitable supporting means, and during such movement, and at different points in the travel of such films or prints, subjecting the films or prints successively to the action of developing and fixing means, and maintaining the emulsion surfaces of the films or prints at all times out of contact with the supporting means, and assuring a desired action of the developing means by regulation of the temperature thereof."

Analysis of claim one shows that it consists of three elements, namely: (a) Moving such films or plates endwise over suitable supporting means, and during such movement, and at different points in the travel of such films or prints, subjecting the films or prints successively to the action of developing and fixing means; (b) maintaining the emulsion surfaces of the films or plates at all times out of contact with the supporting means; and (c) assuring a desired action of the developing means by regulation of the temperature thereof. The file wrapper discloses that the claim as originally filed, before it was amended by the addition of elements (b) and (c), was rejected as being merely functional of the apparatus. After amendment by the addition of element (b) the claim was rejected on the ground that it was anticipated by the British patent to Hepworth, No. 13,315 of 1898. The examiner stated: "The idea, therefore, of keeping the emulsion out of contact with the supports, during that part of the film's travel in which such contact would be most injurious, is clearly anticipated by Hepworth, and the extension of the idea, so as to prevent contact during all the manipulations would not involve invention."

Gaumont then amended the claim by adding the third element relating to the regulation of the temperature of the developing means and the claim was allowed without further reference in the file wrapper. It is thus seen that the basis for the allowance of claim one for a process of continuous development of motion picture film was the regulation of the temperature of the developing solution in combination with the other two elements, which, taken alone, were anticipated in the prior art. The trial court found "that prior to Gaumont's inventions, it was common practice in the general photographic art to keep the developer at as near a constant temperature as possible and it was recognized that the emulsion side of the film, particularly when wet, should be kept out of contact with other surfaces to avoid injuring the emulsion." There is ample support in the evidence for this finding. There was nothing new in Gaumont's idea of temperature regulation in a process for developing motion picture film. This idea was disclosed in the Encyclopedia Dictionary of Photography published in 1898 and it was a fact well known in the art. Nor was there anything new in Gaumont's idea of a continuous process for developing motion picture film. Such a continuous process was disclosed in the British patent, No. 13,315, issued to Hepworth in 1899, as was the idea of keeping the emulsion surface of the film out of contact with the supporting means. The combination of these three elements, all of which were well known in the art, did not amount to invention. Claim one of the first Gaumont patent, No. 1,177,697, for a process of developing motion picture film, is therefore invalid. Eagle et al. v. P. & C. Hand Forged Tool Co. (C.C.A.) 74 F.(2d) 918; Mettler v. Peabody Engineering Corporation (C.C.A.) 77 F.(2d) 56.

Although the Circuit Court of Appeals for the Second Circuit in Cinema Patents Co. v. Warner Bros. Pictures, supra, did not pass upon the validity of claim one of patent No. 1,177,697, in discussing that claim the court stated: "Viewed broadly and without reference to the particular apparatus described in the patent for practising the process, each of these steps was old. In 1894 patent No. 525,849 to Mackusick was granted for an apparatus which mechanically advanced a long photographic

paper band through developing, fixing, and washing tanks. Numerous other patents prior to Gaumont disclose the same idea. So does the British patent to Hepworth, No. 13,315, May 20, 1899, which relates specifically to motion picture film. The latter also teaches the idea of keeping the emulsion surface out of contact with the supporting means, Hepworth's method being to recess or undercut the rollers. Obtaining this result by passing a sensitized film, while drying, in a spiral path over upper and lower rollers, is disclosed in patent No. 676,314 to Hearson. The fourth essential, namely, regulating the temperature of the developer, was known to be necessary from early days of the photographic art, and is disclosed in patent No. 630,500 to Graeme and British patent No. 22,456 of 1907 to Watkins. It is apparent, therefore, that Gaumont contributed no broadly new process. If his process claim is to be held valid as an invention, it must be limited to a process practiced in the way and by means of the combination of instrumentalities which he discloses."

In dealing with the other claims in issue covering the apparatus, that court stated: "What has been said above with reference to according a limited construction to the process claim in view of the prior art, is equally applicable to the apparatus claims."

In Cinema Patents Co. v. Duplex Motion Picture Industries, Inc., 66 F.(2d) 748, supra, the Circuit Court of Appeals for the Second Circuit held that the Duplex machine, which in the case at bar is alleged to infringe claims 2, and 8 to 12, inclusive, of Gaumont patent, No. 1,177,697, and claim 12 of Gaumont patent, No. 1,209,696, did not constitute an infringement of those claims of the patents in suit. We are in accord with the decision of the Circuit Court of Appeals for the Second Circuit and it is unnecessary to extend this opinion by again setting out the various points of difference between appellant's apparatus and the alleged infringing machine used by appellees. For a detailed discussion of these differences we refer to the decision of District Judge Campbell in Cinema Patents Co. v. Duplex Motion Picture Industries, Inc. (D.C.) 60 F.(2d) 1013. In view of our conclusion that there is no infringement of these apparatus claims, it becomes unnecessary to consider their validity.

Decree affirmed.